**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHELLEY R. PONIST, individually and as Administratrix of the ESTATE OF ZACHARY J. SAHM,** | ) | |
| **Plaintiffs,** | ) | **Civil No. 25-804** |
| | ) | **Judge Marilyn J. Horan/** |
| **v.** | ) | **Magistrate Judge Kezia O. L. Taylor** |
| **ALLEGHENY COUNTY, ORLANDO HARPER, CITY OF PITTSBURGH, ALLEGHENY HEALTH NETWORK, MD WILLIAM K. JOHNJULIO, RN LISA KUDRAV, PA TORI PIPAK, RN MICHAEL ELIC, ADON JENNIFER STEPIC, NP SARAH SIMERLY, OFFICER TORRY HAWKINS, FNU WILLIAMS, CITY OF PITTSBURGH, JOHN AND JANE DOES 1-10, JOHN AND JANE DOES LOCUM TENENS, JACK AND JILL ROES 1-10, FNU HOLT, FNU SARVER, FNU CHAVEZ, MICHAEL HIROSKY, and ASHLEY BRINKMAN,** | ) | |
| **Defendants.** | ) | |

**OPINION and ORDER**

This case was referred to United States Magistrate Judge Kezia O. L. Taylor for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A) and (B), and Rule 72 of the Local Rules for Magistrate Judges. On May 22, 2026, the Magistrate Judge issued two separate Reports and Recommendations. ECF Nos. 100 & 101. In the Report filed at ECF No. 100, the Magistrate Judge recommended granting City of Pittsburgh's Motion to Dismiss, granting Allegheny County's Motion for Partial Judgment on the. In the Report filed at ECF No. 101, the Magistrate Judge recommended granting Defendant NP Sarah Simerly's Rule 12(b)(5) Motion to Dismiss.

The parties were informed that written objections to the Report and Recommendation were due by June 5, 2026. Plaintiff, Shelley R. Ponist, timely filed written objections as to each Report. ECF Nos. 107 & 108. The City of Pittsburgh filed a Response to Plaintiff's Objections. For the reasons that follow, after *de novo* review of the relevant pleadings and documents in this case, together with the Reports and Recommendations, and Objections thereto, the Court finds that Plaintiff's Objections do not undermine the recommendations of the Magistrate Judge.

## I. BACKGROUND

Plaintiff Shelley R. Ponist, individually and as Administratrix of the Estate of Zachary J. Sahm, asserts a variety of claims, arising from the September 13, 2023 death of her son, while he was committed to the Allegheny County Jail (ACJ). Decedent, Zachary J. Sahm, was committed to the ACJ on September 9, 2023. During his initial medical screening, Decedent tested positive for fentanyl and heroin, and he admitted to daily fentanyl and meth use. At this medical screening, it was clear that Decedent was suffering from obvious signs of opioid withdrawal. Because he was identified as having opioid use disorder and opioid withdrawal, Decedent was assigned to a first-floor detox unit, provided with an identification card that designated him as a detoxing inmate, and he was placed on the ACJ's opioid detoxification protocol, which provided for specific levels of intervention, monitoring, and treatment.

At 7:28 a.m. on September 13, 2023, an ACJ nurse called 911 to report that Decedent was going through opioid withdrawal and suffering severe symptoms. The City of Pittsburgh's Emergency Medical Services dispatcher, who took the call, classified the call as non-emergent. The ACJ nurse again called 911 at 7:35 a.m. to report the incident. Paramedics were dispatched

at 7:38 a.m. and arrived at Decedent's cell at 7:57 a.m. to find that Decedent was unresponsive and that he had flatlined. The paramedics resuscitated Decedent, and, at 8:47 a.m., he was transported to UPMC Mercy Hospital, arriving at 8:51 a.m. Decedent was pronounced dead, in the emergency department, at 9:17 a.m.

Plaintiff alleges that Decedent was denied the full benefits of the opioid detoxification protocol, in that he was entitled, but did not receive, twice-daily clinical assessments, "COWS" scoring, vital signs checks, and monitoring and assessment of his hydration status. Instead, Plaintiff alleges that Decedent received only one clinical assessment per day; his vital signs were not taken in the two days preceding his death, his hydration status was never monitored or assessed, and there was no hydration program at all.

Plaintiff asserts fifteen claims against Defendants, as follows with claims against the moving Defendants identified in bold. Count I: § 1983 Failure to Train or Supervise; Count II: § 1983 Inadequate Screening (As to **Allegheny County**, AHN, and John Doe Locum Tenens); Count III: § 1983 Denial and/or Delay of Access to Adequate Medical Care Under 42 U.S.C. § 1983 (**Simerly** and Medical Defendants); Count IV: § 1983 Supervisory Liability; Count V: Negligent Hiring and/or Supervision; Count VI: Corporate Medical Negligence; Count VII: Vicarious Liability; Count VIII: Medical Negligence (As to the Medical Defendants); Count IX: Deliberate Indifference Under 42 U.S.C. § 1983 (**Simerly** and Corrections and Medical Defendants); Count X: Title II of the ADA (**Allegheny County**) Count XI: Disability Discrimination Under Section 504 of the Rehabilitation Act (**Allegheny County**); Count XII: Title II of the ADA (**City of Pittsburgh**); Count XIII: Disability Discrimination Section 504 of the Rehabilitation Act (**City of Pittsburgh**); Count XIV: Wrongful Death 42 Pa.C.S.A. § 8301

(**Allegheny County, City of Pittsburgh, Simerly** and all Defendants); and Count XV: Survival 42 Pa.C.S.A. § 8302 (**Allegheny County, City of Pittsburgh, Simerly** and all Defendants)

## II. DISCUSSION

In response to the Report and Recommendations, two separate written Objections were filed by Plaintiff. The filing of timely objections requires the district judge to "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *Sample v. Dieck*s, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); Fed. R. Civ. P. 72(b)(3). The Court first addresses Plaintiff's Objections with respect to Allegheny County, followed by Plaintiff's Objections with respect to the City of Pittsburgh, and then Plaintiff's Objections with respect to Sarah Simerly.

### A. Allegheny County

Plaintiff asserts Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) claims against Allegheny County, alleging that the County denied Decedent the benefits of the detox program because of his disability. The Magistrate Judge concluded that, "it is clear that Decedent was provided with access to ACJ's medical programs and services, generally; and, more specifically, ACJ's detox protocol." ECF No. 100, at 16. The Magistrate Judge states that the "crux of Plaintiff's claim is that the program or service offered was deficient because Decedent was not accorded the full benefit of the County's applicable treatment policies and procedures." *Id.* (citing Am. Compl. ¶¶ 227-229). The Magistrate Judge states that such allegations "represent[] a challenge to the efficacy of the treatment provided [*i.e.*, inadequate medical care]," but they do not amount to a claim that the Decedent was "excluded or denied due to a disability" in violation of the ADA or RA Act. *Id.* at 16.

Plaintiff argues that the Magistrate Judge erred, because she erroneously recharacterized Plaintiff's ADA and RA claims as claims alleging inadequate medical care. Plaintiff also argues that the Magistrate Judge improperly determined that the cause of the failure to provide the benefits of the detox program was due to understaffing, rather than disability discrimination. Plaintiff argues that the question of whether the failure to provide benefits of the program was due to inadequate medical care, understaffing, or to Decedent's disability are factual determinations to be made at a later stage of the proceedings. Plaintiff argues that the Magistrate Judge's conclusion, that Decedent was not excluded from the ACJ's program, fails to address the full range of statutory prohibitions within the ADA as set forth in 42 U.S.C. § 12132. Plaintiff thus argues that the Report's analysis did not consider that the claims concern Decedent's alleged exclusion from receiving the full benefits of the detox program because of his disability. Thus, Plaintiff alleges that Decedent's exclusion from the benefits of the program occurred as a direct result of disability discrimination.

The Court agrees with the Magistrate Judge's conclusion that Plaintiff has failed to properly state ADA and RA claims against the County. Decedent presented to the Jail with opioid use disorder and opioid withdrawal. He was identified as having a disability and placed in the detox program. He was provided with a "detoxing inmate" identification card and housed in the first-floor detox unit. The ACJ's opioid detoxification protocol entitled Decedent to defined levels of medical treatment, supervision, and monitoring. Plaintiff alleges that the standard of care for detoxing inmates, and specifically for Decedent, and as prescribed by the protocol, was not met. As detailed in the Report, Plaintiff alleges examples of the County's failure to meet the protocol standard of care, such as understaffing, inadequate medical care, and failure to train.

Failing to meet the medical standard of care as defined in the protocol, is not a disability-based denial of the program's benefits; it is an assertion of inadequate medical care. There are no nonconclusory allegations to support that the alleged inadequate level of medical care was because of Decedent's disability.

After review of Plaintiff's Objections, the allegations supporting Plaintiff's ADA and RA claims, and the Report and Recommendation, the Court agrees with the Magistrate Judge's analysis that Plaintiff has failed to sufficiently state ADA and RA claims against the County. Plaintiff's Objections to the Report and Recommendation, with respect to Allegheny County's Motion for Partial Judgment of the Pleadings, are overruled. The Magistrate Judge's Report and Recommendation, as to Counts X and XI, will be adopted.

**B. City of Pittsburgh**

The Magistrate Judge recommends that the City of Pittsburgh's Motion to Dismiss be granted, and that Plaintiff's ADA claim, RA claim, state law wrongful death claim, and state law survival claim against the City be dismissed.

**1. ADA and RA Claims Against the City**

In Counts XII and XIII, Plaintiff sues the City, claiming that Decedent was denied prompt and appropriate emergency medical service, because of his disability or because he was perceived as disabled. Plaintiff alleges that the ACJ nurse contacted 911, informed the dispatcher of an emergency situation and that the inmate was going through opioid withdrawal. The dispatcher classified the call as "non-emergent." Thus, Plaintiff alleges that the emergency medical team's arrival was delayed because of Decedent's disability.

Plaintiff argues that the City's actions were, at a a minimum, based upon the perception that Decedent was disabled. ECF No. 107, at 11-12. Plaintiff argues that the Nurse, who informed the dispatcher that the Decedent was going through opioid withdrawal, which was followed by the dispatcher classifying the call as "non-emergent," supports the inference that the Cirty employees perceived Decedent as disabled. *Id.* at 12. In support of Plaintiff's claims, she further alleges that "the City maintained 'a policy and practice of not providing prompt and appropriate emergency medical service to people suspected of having opioid use disorder,' and that it failed to train its dispatchers and medics to provide such individuals prompt and equitable care.'" *Id.* (citing Am. Compl. at ¶¶ 241–242). Plaintiff thus concludes that, the allegations plausibly support the inference that Decedent's disability caused his situation to be classified as non-emergent, such that his disability caused the emergency responders their delay in responding. ECF No. 107, at 11-12.

In response, the City emphasizes that it did not employ the 911 dispatcher; and thus, the City is not responsible for the dispatcher's actions. Next, the City argues that there are no allegations to support the conclusion that the "City Paramedics were informed or otherwise aware of [Decedent's] alleged disability." ECF No. 111, at 4. The City further argues that "Plaintiff does not make any reference to any statements, actions, or inactions that could lead this Court to infer that City Paramedics delayed or denied emergency medical services to [Decedent] on the basis of his disability, i.e., opioid use disorder." *Id.*

The Court finds no error with the Magistrate Judges' Report. Because the dispatcher was not employed by the City, *see* ECF No. 111, at 6-7, the City does not have responsibility for the dispatcher's actions. Further, Plaintiff only alleges the conclusion that the emergency responders

delay in response was due to Decedent's disability. In contrast, the Court in *Cappel v. Aston Township Fire Department*, held that Plaintiff's allegations supported that the paramedics were aware of decedent's disability. 693 F. Supp. 3d 467 (E.D. Pa. 2023). In *Cappel*, the paramedics had discussed the decedent's condition (Covid) and, because of the condition, they decided to stay outside of the home. In addition, one paramedic refused to attend to the decedent a second time, because "he had a family to think about." *Id.* Such allegations support that the paramedics' failure to attend to the decedent was because of the decedent's disability. Here, there are no other alleged facts to establish that the paramedics' response was delayed because of the Decedent's disability.

Plaintiff's Objections to the Report and Recommendation, with respect to the City of Pittsburgh's Motion to Dismiss the ADA and RA claims, are overruled. The Magistrate Judge's Report and Recommendation, as to Counts XII and XIII, will be adopted.

**2. State Law Claims Against the City**

The Magistrate Judge recommends dismissal of Plaintiff's state law Wrongful Death and Survival claims against the City be dismissed. Said claims must be dismissed because, as explained in the Report, they are barred by Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S. §§ 8501 *et seq.* ECF No. 100, at 20-21. Plaintiff does not Object to this portion of the Report. The Court agrees with the Magistrate Judge's recommendation that dismissal of the state law claims is appropriate based upon the City's immunity from suit. The Magistrate Judge's Report and Recommendation, as to Counts XIV and XV, asserted against the City, will be adopted insofar as the Report recommends dismissal with prejudice based upon immunity.

### C. Medical Defendant NP Sarah Simerly

Nurse Practitioner Sarah Simerly is named in four Counts, along with all Medical Defendants (Counts III, VIII, and IX). She moved to dismiss the Amended Complaint for failure to timely effect proper service. Under Federal Rule of Civil Procedure 4(m), the Complaint having been filed on June 12, 2025, service upon Defendant Simerly was required to be completed by September 10, 2025. Service did not occur until February 17, 2026. The Report recommends dismissal, concluding that no exception to the time limit for service applied. Plaintiff objects, arguing that "the equitable factors properly weighed favor permitting service to stand." ECF No. 108, at 1. Plaintiff also argues that the Report's finding of a lack of diligence relies upon a disputed factual assertion raised for the first time in Defendant's Reply. Plaintiff refers to the timing of when Plaintiff's counsel was allegedly told that Simerly did not work for Allegheny Health Network (AHN). Plaintiff also argues that the Magistrate Judge failed to give proper weight to the detrimental effect that the running of the statute of limitations would have if Plaintiff were required to file a new complaint against Defendant Simerly. Given the relevant timelines, re-filed claims will likely be time barred. Finally, Plaintiff argues that analysis of the equitable factors should result in denial of Defendant Simerly's Motion to Dismiss.

#### 1. Notice that Simerly was not Employed by AHN

Plaintiff's Objection, that the Report improperly relies upon a factual assertion as to when counsel learned that Defendant Simerly was not an AHN employee, does not undermine the Report's conclusion. Defendant Simerly asserts that such information was conveyed to Plaintiff's counsel by email on September 23, 2025. Plaintiff argues that, even accepting that said information was emailed to Plaintiff's counsel, the information only conveyed a negative: that

Simerly was not employed by AHN, it did not positively state who currently employed her. Plaintiff's counsel maintains that they did not discover Simerly's employer until December 23, 2025. Plaintiff thus states that the "relevant period of any arguable delay should run not from September 23, 2025, but from the defense's December 23, 2025 disclosure of the correct employer—after which counsel promptly filed the praecipe to reissue summons, and service was perfected on February 17, 2026." ECF No. 108, at 6.

The Magistrate Judge acknowledged the September 23, 2025 alleged email to Plaintiff's counsel during her discussion of whether Plaintiff established good cause for a *mandatory*, rather than discretionary, extension. ECF No. 101, at 5-6. However, she also noted that Plaintiff's counsel's certification "reflects no contact or discussion with AHN counsel until December 23, 2025." ECF No. 101, at 6. The Magistrate Judge then stated that the allegation that counsel was informed that Simerly was not employed by AHN earlier that December 23, 2025; that is, on September 23, 2025, "*further* undermin[es] Plaintiff's position." ECF No. 101 (emphasis added). The Magistrate Judge therefore did not render a decision based solely upon the September 23, 2025 date. In the Magistrate Judge's view, the earlier date further undermines Plaintiff's position, but even without it, the Magistrate Judge's analysis leads to the reasonable inference that the December 23, 2025 date, on its own, already undermined Plaintiff's position and weighed against granting a mandatory extension.

Moreover, as of September 26, 2025, Plaintiff's counsel knew from the record that Simerly had not been served as an AHN employee. On that date, counsel for AHN entered their appearance for AHN, and two AHN employees, William K. Johnjulio, M.D., and Tori Pipak, PA. ECF No. 50. AHN's counsel also filed individual Waivers of Service for each of their AHN

Defendants on September 26, 2025. ECF Nos. 47-49. Thus, Counsel knew or should have known on September 26, 2025 that AHN's counsel had neither entered an appearance nor filed a Waiver of Service for Defendant Simerly. Said documents informed Plaintiff's counsel that, at a minimum, Simerly, as a believed-to-be AHN employee, had not yet been properly served. Such information of record as of September 26, 2025 required Plaintiff's counsel to act to immediately address the then out-of-time lack of service issue concerning Simerly. At a minimum, Plaintiff's counsel could have filed a motion to extend the time for service, but he did not. Accordingly, this Objection is overruled.

**2. Limitations Period and Balancing the Equitable Factors**

In weighing whether to grant a *discretionary* extension to serve the Complaint, the Magistrate Judge considered the following factors: (i) actual notice of the litigation, (ii) prejudice to the defendant, (iii) expiration of the statute of limitations on the causes of action, (iv) the defendant's conduct, and (v) whether the plaintiff is proceeding pro se. ECF No. 107, at 7 (citing *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009) and *Boley v. Kaymark*, 123 F.3d 756, 759 (3d Cir. 1997)). The Magistrate Judge concluded that three of the five factors favor dismissal. Specifically, that Simerly did not have actual notice of the lawsuit, Simerly did not attempt to avoid or hinder service, and Plaintiff was represented by counsel. Weighing against dismissal, the Magistrate Judge concluded that "there appears to be no discernible prejudice to Defendant Simerly," and that, the bar of the statute of limitations "weighs in favor of extending the time for service based on the Court's policy favoring cases being decided on the merits." ECF No. 111, at 8 & 9. With respect to the statute of limitations bar, however, the Magistrate Judge explained that "in this case, the weight of this consideration is somewhat

reduced because Plaintiff filed her Complaint within three months of the last day of the statute of limitations." ECF No. 101, at 9. According to the Magistrate Judge, "the statute of limitations is not viewed as favorably to Plaintiff as it would have been had she filed her lawsuit in a more expeditious manner, leaving more time to address any service concerns." *Id.* Accordingly, she recommended that Simerly's Motion be granted, commenting that "the relevant factors governing the Court's discretion counsel in favor of dismissal, and dismissal would be well within the Court's sound discretion." ECF No. 101, at 9.Plaintiff argues that the Magistrate Judge's Report "discounts the controlling weight that the running of the statute of limitations carries in the discretionary-extension analysis—a factor that, under binding Third Circuit precedent, weighs heavily in favor of extension because dismissal would permanently bar Plaintiff's claims against Defendant Simerly." ECF No. 107, at 4.

Plaintiff's Objection does not undermine the Magistrate Judge's Report. The Magistrate Judge properly considered the effect that the running of the limitations period would have on Plaintiff's claims against Simerly. She did not place undue weight upon this factor, stating that the fact that suit was initiated only three months prior to the running of the statute of limitations means that this factor is not viewed as favorably to Plaintiff. The Plaintiff also, failed to take sufficient efforts to locate and timely serve Defendant Simerly, from the date she filed her Complaint, June 12, 2025 until February 17, 2026, when Defendant Simerly was eventually served. Following consideration of all factors, as set forth in the Report and as addressed herein, this Court concludes that dismissal of Plaintiff's claims against Simerly is appropriate.

Plaintiff's Objections to the Report and Recommendation, with respect to the Defendant Simerly's Motion to Dismiss regarding service of process, are overruled. The Magistrate Judge's Report and Recommendation, as to Counts III, VIII, and IX, asserted against Defendant Simerly, will be adopted.

## III. CONCLUSION

The Court accepts the Report and Recommendations, filed at ECF No. 100, as to Allegheny County's Motion for Partial Judgment on the Pleadings, and as to the City of Pittsburgh's Motion to Dismiss. The Court also accepts the Report and Recommendation, filed at ECF No. 101, as to disposition of Defendant Simerly's Motion to Dismiss.

Accordingly, the following Order is hereby entered.

## ORDER

AND NOW, this 23rd day of September, 2026, it is hereby **ORDERED** that Plaintiff's Objections to the Report and Recommendations as to the Defendants County of Allegheny, City of Pittsburgh, and Sarah Simerly, are overruled. The Magistrate Judge's Reports and Recommendations, ECF Nos. 100 and 101, as supplemented herein, are adopted as the Opinion of the Court. IT IS FURTHER ORDERED as follows:

**A.** The County of Allegheny County's Motion for Partial Judgment on the Pleadings, ECF No. 66, is GRANTED. Counts X and XII are dismissed. Plaintiff is afforded leave to amend.

**B.** The City of Pittsburgh's Motion to Dismiss, ECF No. 41, is GRANTED. Counts XII and XIII are dismissed. Plaintiff is afforded leave to amend as to Counts XII and XIII. Counts XIV and XV are dismissed without leave to amend.

**C.** Defendant NP Sarah Simerly's Motion to Dismiss under Fed. R. Civ. P. 12(b)(5), ECF No. 86, is GRANTED. Counts III, VIII, and IX are dismissed. Leave to amend is granted.

**D.** Any amendment as authorized herein shall be filed no later than October 28, 2026.

This matter is returned to the Magistrate Judge for further proceedings.

Marilyn J. Horan
United States District Court Judge